UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOCELYN DEMAIO,                    :
    Plaintiff,                 :
                               :
    v.                         :        Civ. No.  3:09-cv-2133 (WWE)
                               :
STATE OF CONNECTICUT               :
DEPARTMENT OF CORRECTION,          :
    Defendant.                 :

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On December 28, 2009, the Plaintiff, Jocelyn DeMaio, filed a complaint alleging that her

employer, the State of Connecticut Department of Correction (the "DOC"), violated Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") by (1) intentionally

discriminating against her based on her sex, (2) subjecting her to a hostile work environment, and

(3) retaliating against her after she reported sexual harassment and discrimination.  The DOC

now moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on all the

Plaintiff's claims [Doc. No. 59].  For the reasons stated herein, the DOC's motion for summary

judgment [Doc. No. 59] is **granted**.

I.        BACKGROUND

The Plaintiff has served as a correction officer with the DOC since 2001.  The gravamen

of her claims is that her superiors at Carl Robinson Correctional Institution ("CRCI") engaged in

a series of frivolous investigations of her professional conduct.  Her superiors used these

frivolous investigations, the Plaintiff claims, to punish her for informally reporting a 2003

1

instance of sexual assault and for formally making complaints of sexually harassing behavior by her superiors.  These investigations, she further claims, created a hostile work environment and constitute unlawful retaliation, and the disciplinary measures resulting from these investigations constitute unlawful discrimination and retaliation.

The parties have filed voluminous evidentiary submissions in the summary judgment briefing process.  This ruling will briefly summarize this evidence, reserving some facts for discussion in relation to resolving the Plaintiff's claims.  At the summary judgment stage, this Court views the record in the light most favorable to the non-moving party, here the Plaintiff. See Terry v. Ashcroft, 336 F.3d 138, 139 (2d Cir. 2003).

The Plaintiff worked as a correction officer at CRCI between 2001 and 2008.  (Def.'s Local 56(a)(1) Stmt. ¶ 1.)[1]  In July 2003, one of her superiors, a Lieutenant David Jiminez, sexually assaulted her.[2]  Id. ¶¶ 2-3.  The Plaintiff bypassed formal reporting channels and instead

---

[1] The Plaintiff argues that the DOC's statement of undisputed material facts "reads like a novel from Dostoevsky" and "should be rejected as outside the reasonable contemplation of the procedure set forth in the Federal Rules for a motion of this type."  (Pl.'s Rule 56(a)(2) Stmt. at 1.)  The Plaintiff's request cites no authority favoring such draconian relief, so this Court does not grant it and concludes that the DOC's submissions are appropriate.  Moreover, her own submissions do not comply with Local Rule 56, which provides that "each denial in an opponent's Local Rule 56(a)2 Statement . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  D. Conn. L. Civ. R. 56(a)(3).  The Plaintiff's submissions violate this rule by interposing several objections to specific statements of fact submitted by the DOC without controverting the asserted fact or citing to specific evidence.  To the extent that the Plaintiff's objections lack merit, this Court will therefore deem facts the Plaintiff did not dispute in conformity with Local Rule 56(a)(3) as admitted.  This ruling will discuss the specific facts the Plaintiff constructively admitted in this manner as appropriate below.

[2] Lt. Jiminez disputes that the sexual assault took place.  (Weir Aff. Ex. 20, at 19-20.) Given the posture of this matter, this Court resolves this factual dispute in the Plaintiff's favor for purposes of this motion.

informally reported the assault to another superior officer, a Captain Todd Case, the same night as the incident.  (DeMaio Dep. 50:23-25, 51:1, Oct. 15, 2010.)  The Plaintiff and Lt. Jiminez initially resolved the matter without further involvement of their superiors.  (Def.'s Local 56(a)(1) Stmt. ¶¶ 5-8.)  Some five years later, the Plaintiff unsuccessfully attempted to seek Lt. Jiminez' criminal prosecution for the assault.  Id. ¶ 14.

In October 2003, three months after the Plaintiff reported the sexual assault to Captain Case, Captain Case began investigating the Plaintiff for "undue familiarity"[3] with an inmate.  Id. ¶ 39.  The investigation revealed that the Plaintiff had personal conversations with the inmate and showed a picture of her child to the inmate.  Id. ¶¶ 39-41.  The investigation did not substantiate other, more serious allegations of misconduct by the Plaintiff.  Id.  Accordingly, in February 2004 Captain Case issued a written reprimand to the Plaintiff for undue familiarity with the inmate.  Id. ¶ 39.

On February 22, 2005, the Plaintiff filed a formal complaint with the DOC's Affirmative Action Unit.  (Weir Aff. Ex. 5, at 1.)  The complaint alleged that one of the Plaintiff's superiors, a Lieutenant Adrian Reaves, improperly resolved an August 2004 incident in which an inmate exposed himself and masturbated in view of the Plaintiff.  Id.  The Plaintiff further alleged that Lt. Reaves disciplined the Plaintiff without cause both verbally and in writing, assigned her to posts she found undesirable, and deprived her of overtime opportunities.  Id. at 1-2.  The Affirmative Action Unit investigated the Plaintiff's allegations and determined that, although Lt.

---

[3] Administrative directives promulgated by the DOC to its employees define "undue familiarity" as a number of potentially compromising interactions with inmates, such as sexual conduct, conversations about personal matters, and discussion about facility security practices. (Callahan Aff. Ex. 2, ¶ 5.B.15.)

Reaves handled the inmate masturbation incident inappropriately, no improper retaliation or harassment had taken place.  Id. at 4.

On March 16, 2005, the Plaintiff received a written reprimand for unprofessional behavior.  (Def.'s Local 56(a)(1) Stmt. ¶ 47.)  This reprimand resulted from an investigation into a December 2004 incident where the Plaintiff failed to open a locked door when Lt. Reaves asked her to do so.  Id.

One week after this reprimand issued, and one month after the Plaintiff filed her complaint with the Affirmative Action Unit, another investigation into allegations of the Plaintiff's undue familiarity with inmates began.  Id. ¶ 62.  This investigation resulted from a letter to the Plaintiff suggestive of improper communication between her and an inmate; DOC personnel discovered the letter on March 4, 2005, and an investigation was authorized on March 22, 2005.  (Weir Aff. Ex. 1, at 4-5.)  No disciplinary measures resulted from this investigation. Id. at 1.

Between 2005 and 2007, two additional investigations into allegations of the Plaintiff's undue familiarity with inmates began.  (Def.'s Local 56(a)(1) Stmt. ¶¶ 63-64.)   One investigation, commenced in December 2005, began after a DOC officer received a telephone call from an inmate's wife about a possible sexual relationship between the inmate and the Plaintiff.  (Weir Aff. Ex. 2, at 4.)  The ensuing investigation found no evidence of such a relationship and imposed no discipline or punishment on the Plaintiff.  Id. at 7.  The other investigation, commenced in November 2007 after the filing of an incident report about the Plaintiff's inappropriately long conversations with an inmate and receipt of a birthday gift from an inmate, resulted in a finding that the Plaintiff had exercised "poor judgment" and violated a

4

number of administrative directives.  (Def.'s Local 56(a)(1) Stmt. ¶¶ 64-68.)  The investigation

did not substantiate the more serious allegations against the Plaintiff.  Id.  As a result of this

investigation, the Plaintiff's superiors informally counseled her about her conduct without

imposing a formal punishment or reprimand.[4]  Id. ¶ 68.

On December 17, 2007, while the November 2007 undue familiarity investigation was

still ongoing, Lt. Reaves reprimanded the Plaintiff for what he perceived to be an improperly

long conversation between the Plaintiff and an inmate.  Id. ¶ 90.  Lt. Reaves filed an incident

report documenting what he had observed.  Id. ¶¶ 90-91.  The same day, the Plaintiff also filed an

incident report asserting that Lt. Reaves' reprimand was improper and made her feel harassed

and targeted by "the administration."  Id.  The Plaintiff's complaint was referred to the DOC's

Equal Employment Opportunity Director, who determined that it fell outside the jurisdiction of

his department, the DOC's Affirmative Action Unit; no further follow-up appears to have

occurred.  (Weir Aff. Ex. 9, at 2.)  Lt. Reaves' complaint resulted in the Plaintiff receiving, on

December 27, 2007, an informal "coaching session" about not engaging in lengthy conversations

with inmates.  (Weir Aff., Ex. 10.)

Some six months later, on June 25, 2008, the Plaintiff filed another complaint with the

Affirmative Action Unit.  (Def.'s Local 56(a)(1) Stmt. ¶ 95.)  In this complaint, the Plaintiff

asserted that Lt. Reaves was harassing her because of previous conflicts between the two of

them.  (Weir Aff. Ex. 11, at 4.)  The complaint to the Affirmative Action Unit also included the

---

[4] For reasons that remain unclear, this informal counseling session did not occur until August 2009, after the Plaintiff had filed a formal administrative complaint with the Connecticut Commission on Human Rights and Opportunities. (Weir Aff. Ex. 4.)

incident reports that both the Plaintiff and Lt. Reaves filed in December 2007 about Lt. Reaves' reprimand of the Plaintiff for allegedly engaging in a lengthy conversation with an inmate.  (See generally Weir Aff. Ex. 11.)  After interviewing the Plaintiff, an investigator determined that the Plaintiff's complaints against Lt. Reaves did not raise a sexual harassment issue and fell outside the Affirmative Action Unit's jurisdiction.  (Weir Aff. Ex. 12, at 1; Weir Aff. Ex. 13.)

On July 4, 2008, while the investigation into the Plaintiff's June 2008 complaint of harassment was ongoing, the Plaintiff and another correction officer reported to Lieutenant Dawne Clark that several supervisors, including Lt. Jiminez, had attempted to persuade an inmate to wear recording equipment in order to catch the Plaintiff in acts of misconduct.  (Weir Aff. Ex. 14, at 1-2.)  The other correction officer also reported that an inmate complained to him that the Plaintiff had called the inmate a "snitch."  Id. at 1.  At a later meeting with Lt. Clark on July 5, 2008, the Plaintiff also reported that she believed her supervisors were quicker to discipline her than they were other officers and that inmates had reported to her that her supervisors had made inquiries to them about her conduct.  Id. at 2.  An inmate confirmed to Lt. Clark that other supervisors had inquired of him about the Plaintiff's conduct.  Id. at 1-2.  The Plaintiff also reported the 2003 sexual assault by Lt. Jiminez and stated that other unspecified officers had exposed themselves in view of the Plaintiff.  Id. at 2-3.  Finally, the Plaintiff reported that, as of July 6, 2008, Lt. Jiminez continued to solicit inmate cooperation in surveilling the Plaintiff with recording equipment; at the time, the Plaintiff believed Lt. Jiminez did so because the Plaintiff had rebuffed his sexual advances five years earlier.  Id. at 3.

The Affirmative Action Unit investigated the Plaintiff's allegations.  The unit requested more detailed information about the dates on which the assault by Lt. Jiminez and other incidents

of harassment took place.  (Weir Aff. Exs. 16-17.)  The Plaintiff agreed to provide information about the dates of the events involving Lt. Jiminez, but she refused to name the supervisors who had allegedly committed other acts of sexual misconduct against her.  (Def.'s Local 56(a)(1) Stmt. ¶ 104; Weir Aff. Ex. 16.)  After the Plaintiff provided information about the timing of Lt. Jiminez' actions, the Affirmative Action Unit ended its investigation because too much time had passed since the assault.  (Weir Aff. Ex. 18.)  Although the unit offered the Plaintiff the opportunity to submit additional information to the unit if she chose, there is no indication that she did so.  Id.

Simultaneously, an investigation began into the Plaintiff's publicly calling an inmate a "snitch."  In her deposition taken during the course of this litigation, the Plaintiff admitted that she called an inmate a "snitch."  (DeMaio Dep. 54:2, Oct. 15, 2010 ("I had called [the inmate] a snitch.").)  As a result of the investigation into this matter, the Plaintiff received a one-day suspension for unprofessional conduct, maintaining an inappropriate demeanor, and failure to ensure a safe and secure environment.  (Callahan Aff. ¶ 28.)  The Plaintiff served the suspension on January 6, 2009.  (Callahan Aff. Ex. 9, at 1.)  In June 2009, the Plaintiff and the DOC agreed, retroactively, to reduce the punishment from a suspension to a written reprimand.  Id. at 2.

In February 2009, one month after the suspension, the Plaintiff engaged counsel and filed administrative complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC").  (Weir Aff. Ex. 19.) The administrative complaint cited as evidence of discrimination, sexual harassment, and retaliation (1) the 2003 sexual assault by Lt. Jiminez, (2) "episodic sexual harassment by [Lt. Reaves]" between 2004 and 2008, (3) the absence of meaningful action based on her internal

complaints of harassment, and (4) Lt. Jiminez' attempt to solicit inmate cooperation in surveilling the Plaintiff with recording equipment. Id. at 1-2.

In response to the CHRO complaint, the DOC's Affirmative Action Unit investigated the portions of the Plaintiff's complaint which it had not previously investigated or considered, principally the allegation that Lt. Jiminez retaliated against the Plaintiff after she reported the 2003 sexual assault. (Weir Aff. Ex. 20, at 1.) During this investigation, an Affirmative Action Unit investigator interviewed the Plaintiff, Lt. Jiminez, and CRCI's Deputy Warden Christopher McDonald; she also obtained a statement from Captain Case, who had left the DOC by the time of the investigation. Id. at 1-2. Lt. Jiminez substantiated the Plaintiff's claim that he had approached at least one inmate to discuss the possibility of surveilling the Plaintiff with recording equipment in order to determine if she was violating the DOC's undue familiarity rules. Id. at 20. Lt. Jiminez stated to the investigator that information from confidential informants and the Plaintiff's history of discipline for undue familiarity prompted the attempted surveillance and that his superiors had authorized him to approach the inmate about the surveillance. Id. at 20-22. (See also Callahan Aff. Ex. 5, at 1.) Deputy Warden McDonald confirmed to the investigator that the attempt to investigate the Plaintiff had a reasonable basis, but he neither confirmed nor denied that he, or anyone else, had authorized Lt. Jiminez to approach an inmate about surveilling the Plaintiff. Id. at 27-29.

Following this investigation, the Affirmative Action Unit investigator concluded that the Plaintiff's prior complaints had been properly resolved and that the allegation of retaliation against Lt. Jiminez lacked evidentiary support. Id. at 3. In reaching these conclusions, the investigator noted inconsistencies in the Plaintiff's version of events and interpreted the timing of

8

the Plaintiff's various complaints as suspect given their proximity to investigations of the Plaintiff for work misconduct.  Id.

One month after the completion of the investigation of her CHRO complaint, the Plaintiff received another one-day suspension based on events that occurred in June, October, and November 2008.  (Callahan Aff. Ex. 5, at 1-3.)  A DOC investigation determined that she had exercised poor judgment by having personal conversations with other DOC staff within hearing distance of inmates, behaving unprofessionally during the investigation, and failing to report the possibility that certain inmates might have correction officers' private information.  (Def.'s Local 56(a)(1) Stmt. ¶ 43.)  The investigation did not substantiate more serious allegations of misconduct against the Plaintiff.  Id.

In November 2008, the DOC transferred the Plaintiff to another facility.  Id. ¶ 1.  In August 2010, the DOC reassigned her again to another facility.  Id.  She remains employed with the DOC and continues to work at that facility.  Id.

On December 30, 2009, the Plaintiff filed this action.  In her complaint, she alleges Title VII claims against the DOC for (1) straightforward discriminatory job action, (2) a hostile work environment, and (3) retaliation.  (Compl. ¶¶ 1, 17.)

## II.    STANDARD

The standard for deciding the DOC's motion is familiar.  Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  No genuine issue of material fact exists, and summary judgment is therefore appropriate, when "the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  But "[c]onclusory allegations will not suffice to create a genuine issue."  Delaware & Hudson Railway Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir.1990).  In an employment discrimination case, "a trial court must be cautious about granting summary judgment to an employer when . . . its intent is at issue."  Gallo v. Prudential Residential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## III.    DISCUSSION

Title VII prohibits "discriminat[ion] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of," among other things, "such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  This statutory provision prohibits both straightforward discriminatory job action, see Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008), and discrimination by being forced to work in a hostile work environment, see Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986).  A separate section of Title VII governs retaliation and prohibits an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  42 U.S.C. § 2000e-3(a).

Here, the Plaintiff has alleged Title VII claims for (1) straightforward discriminatory job action, (2) a hostile work environment, and (3) retaliation.  (Compl. ¶¶ 1, 17.)  This ruling addresses the DOC's motion for summary judgment with respect to each claim in turn.

A.     Straightforward discriminatory job action.  A plaintiff establishes a prima facie case of straightforward discriminatory job action when she "introduces evidence that raises a reasonable inference that the action taken by the employer was based on an impermissible factor. [The plaintiff] must show: (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  Holcomb, 521 F.3d at 138.

In evaluating claims of straightforward discriminatory employment action, courts use the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green (McDonnell Douglas), 411 U.S. 792 (1973), and Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).  "Under these cases, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. . . .  If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action. . . .  If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination.  The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Holcomb, 521 F.3d at 138 (internal citations and quotations omitted).

11

The DOC argues that the Plaintiff has not, on this record, met her burden to show a prima facie case of discrimination because she could not persuade a reasonable jury that any adverse employment action against her occurred under circumstances giving rise to an inference of discriminatory intent.  This Court agrees.

First, the record reveals that the Plaintiff principally complains of unduly energetic supervision of her work and unjustified investigations into her potential misconduct.  "An investigation or a finding of [culpability] . . . that does not result in discipline does not constitute an adverse employment action."  Ward v. Conn. Dep't. of Pub. Safety, No. 3:06-cv-1936 (PCD), 2009 WL 179786, at *6 (D. Conn. Jan. 21, 2009).  Instead, a materially adverse employment action must "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "usually includes termination, demotion, a decrease in salary, less distinguished title, a material loss of benefits or significantly diminished responsibilities."  Id. (internal quotations omitted).  The Plaintiff therefore cannot make out a prima facie discrimination case based on repeated investigation or energetic supervision of her conduct on the job because these actions are insufficiently adverse to support a prima facie case of discrimination.

Second, to the extent that the Plaintiff complains of discriminatory disciplinary actions which are sufficiently adverse to support a prima facie case of discrimination, she has not shown that any of the discipline imposed on her resulted from gender animus.  The DOC appropriately concedes that two one-day suspensions of the Plaintiff, one each for "poor judgment" and "unprofessional and inappropriate conduct," constitute adverse employment action.  But the DOC properly points to the absence of evidence showing that these suspensions materially

differed from comparable discipline meted out to male DOC employees or were otherwise

motivated by gender animus.  (See Def.'s Local 56(a)(1) Stmt. ¶¶ 43-50, 53-60.)[5]  Because the

Plaintiff has presented no evidence of gender hostility or disparate treatment in the decision to

impose discipline or suspension,[6] the Plaintiff cannot make out a prima facie case of

discrimination based on the two suspensions.  See, e.g., Bennett v. Watson Wyatt & Co., 136 F.

Supp. 2d 236, 248-49 (S.D.N.Y. 2001).

---

[5] The Plaintiff objects to the DOC's statement of material facts insofar as it relies on the affidavit of the DOC's Director of Human Resources as evidence of the disciplinary action taken against other DOC employees for infractions similar to those giving rise to the Plaintiff's two suspensions.  (Pl.'s Rule 56(a)(2) Stmt. ¶¶ 45, 50, 60.)  The Plaintiff argues that the Human Resources Director's affidavit is hearsay and that the only permissible way to submit this evidence is by submitting actual personnel records.  Id.  The Plaintiff is wrong.  Local Rule 56(a)(3) permits a statement of material facts to cite to "(1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  D. Conn. L. Civ. R. 56(a)(3) (emphasis added).  The Plaintiff does not argue that the Human Resources Director would not be competent to testify about these matters at trial.  Accordingly, this Court concludes that the Human Resources Director's affidavit, made upon his personal knowledge, is not hearsay, see Fed. R. Evid. 801, and is competent evidence at the summary judgment stage of discipline imposed on other DOC employees, see D. Conn. L. Civ. R. 56(a)(3).  Because the Plaintiff's objections to this evidence lack merit, and because she has failed to controvert the facts in paragraphs 45, 50, and 60 of the DOC's Rule 56(a)(1) statement, this Court deems the Plaintiff to have admitted them.  See note 1, supra.

[6] To the extent that the Plaintiff relies on the failure of the DOC to investigate and discipline a male DOC officer who reportedly also called an inmate a "snitch" as evidence of disparate treatment, as suggested by her Local Rule 56 statement (see Pl.'s Rule 56(a)(2) Stmt. ¶¶ 53, 58), the argument fails because of insufficient similarity of situation.  The male DOC officer faced a less credible accuser, an inmate (see Faneuff Aff. ¶¶ 6, 11; Faneuff Aff. Ex. 1, at 1), than the Plaintiff, who admitted to engaging in the inappropriate conduct (DeMaio Dep. 54:2, Oct. 15, 2010 ("I had called [the inmate] a snitch.")), and had her misconduct corroborated by other officers (Faneuff Aff. ¶ 11).  The incidents are too dissimilar to constitute evidence of gender animus.  See, e.g., Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 248-49 (S.D.N.Y. 2001).

The Plaintiff has pointed to no additional adverse employment actions other than the two suspensions.  Nor has the Plaintiff pointed to any evidence in the record which would enable a reasonable jury to conclude that the two suspensions were motivated by gender animus. Accordingly, no material facts remain in dispute on the Plaintiff's straightforward discriminatory job action claim, and summary judgment for the DOC is proper.

B.    Hostile Work Environment.  "[T]o make out a hostile work environment claim, a plaintiff must present evidence (1) that the conduct in question was 'objectively severe or pervasive,' that is, that it created an 'environment that a reasonable person would find hostile or abusive;' (2) that the plaintiff subjectively perceived the environment as hostile or abusive; and (3) that the plaintiff was subject to the hostile work environment 'because of' her sex." Zambrano-Lamhaouhi v. New York City Bd. of Educ., ___ F. Supp. 2d ___, No. 08–CV–3140 (NGG) (RER), 2011 WL 5856409, at *8 (E.D.N.Y. Nov. 21, 2011) (quoting Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)).  A court must assess the evidence supporting a hostile work environment claim collectively and evaluate factors such as (1) frequency of the discriminatory conduct, (2) the severity of the conduct, (3) whether it is physically threatening or merely an offensive utterance, and (4) whether it unreasonably interferes with an employee's work performance.  Harris v. Fork Lift Sys., Inc., 510 U.S. 17, 23 (1993).

On this record, the Plaintiff cannot establish that the she suffered the pervasive or severe harassment required to make out a hostile work environment claim.  Although she has presented evidence suggestive of gender animus and evidence of facially gender-neutral hostile events, she has not presented sufficient evidence to link the two together so as to permit consideration of the facially neutral incidents.  The remaining evidence she has presented, while suggestive of gender

14

animus, is insufficiently pervasive or severe to give rise to Title VII hostile work environment relief.

The Plaintiff asserts that a number of facially gender-neutral incidents contributed to the hostility of the DOC work environment, principally investigations of her conduct and discipline for misconduct perpetrated by Lt. Reaves, Lt. Jiminez, and other supervisors. "Facially neutral incidents may be included, of course, among the totality of the circumstances that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex. But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002) (internal quotations omitted).

No such circumstantial basis exists here for attributing discriminatory motive to the conduct of Lt. Reaves or several other supervisors who participated in investigating and disciplining the Plaintiff. The Plaintiff has presented no evidence to suggest that Lt. Reaves, or any other supervisor of hers other than Lt. Jiminez, ever made a derogatory remark to her, a sexual advance upon her, or was involved in a physical altercation with her.[7]  Accordingly, no

---

[7] If the Plaintiff had named Lt. Reaves as one of the superiors who purportedly exposed himself to her, this analysis would change. She did not, so it does not. Moreover, because the Plaintiff did not name any specific superior officers in this allegation (see Weir Aff. Ex. 16), this record does not establish any connection between the purported exposure incident and the investigation and discipline of the Plaintiff; without such a connection, no basis exists for imputing gender animus on the part of any of the Plaintiff's other supervisors based on the purported exposure incident. Similarly, no such basis for imputing gender animus exists based on the Plaintiff's vague, conclusory deposition testimony that sexually derogatory comments "happen[] all the time" at the DOC without more detail about the nature of the comments, any identification of specific perpetrators, or a specific time frame in which such comments took place. (DeMaio Dep. 64:8-66:3, Oct. 15, 2010.) See Dotson v. City of Syracuse, No. 5:04-CV-1388, 2009 WL 2176127, at *15 (N.D.N.Y. July 21, 2009).

evidence suggests that the conduct of Lt. Reaves or any supervisor other than Lt. Jiminez had

gender animus as its basis or motivation.[8]

A circumstantial basis for attributing discriminatory motive to facially neutral events does

exist as to Lt. Jiminez because of the 2003 sexual assault.  But the facially neutral conduct[9] of Lt.

Jiminez, principally his attempt to persuade an inmate to surveil the Plaintiff by wearing

recording equipment, is insufficiently pervasive or severe to give rise to Title VII hostile work

environment liability.  Even crediting all of the Plaintiff's evidence of Lt. Jiminez' attempts to

investigate the Plaintiff, "allegations of excessive monitoring are insufficient to present a triable

claim that she was subjected to a discriminatorily hostile environment."  Temple v. City of New

---

[8] Viewing the evidence in the light most favorable to the Plaintiff, a comment by a superior officer that the Plaintiff faced so many investigations for undue familiarity because of her attractiveness might qualify as sexually hostile.  (See DeMaio Dep. 71:14-72:18, Oct. 15, 2010.)  But the absence of meaningful involvement by this superior officer in the any of the investigations of the Plaintiff or disciplinary measures imposed on her means that this remark provides no basis for attributing gender animus to the investigation or discipline of the Plaintiff by other superior officers.

[9] If considered in combination with the 2003 sexual assault, Lt. Jiminez' conduct might give rise to Title VII liability on a hostile work environment theory; indeed, had the Plaintiff timely complained of the 2003 sexual assault, that alone might have given rise to such liability. See Alfano, 294 F.3d at 374 (citing, inter alia, Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 437 (2d Cir. 1999)).  But because the Plaintiff did not timely complain of the assault, the length of time that passed before the Plaintiff filed her administrative complaint means that the sexual assault cannot form the basis of hostile work environment liability unless she shows that Lt. Jiminez' later conduct had some relation to the sexual assault.  See Nat'l R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002); Coudert v. Janney Montgomery Scott, LLC, No. 3:03-cv-324 (MRK), 2005 WL 1563325, at *7-8 (D. Conn. July 1, 2005).  The Plaintiff concedes that no intervening acts of sexual misconduct took place.  (DeMaio Dep. 46:19-25, Oct. 15, 2010.)  She has not presented any additional information which might establish a relationship between Lt. Jiminez' later conduct and the 2003 sexual assault.  Accordingly, this Court concludes that no relation exists, and this Court cannot consider the 2003 sexual assault as part of the Plaintiff's hostile work environment claim.

York, No. 06-CV-2162 (RRM) (CLP), 2010 WL 3824116, at *6 (E.D.N.Y. Sept. 23, 2010)

(citing Montgomery v. Chertoff, No. 03-CV-5387 (ENV) (JMA), 2007 WL 1233551, at *12

(E.D.N.Y. Apr. 27, 2005) (collecting cases)).  Were such allegations sufficient, the infrequent

and isolated nature of the investigations spearheaded by Lt. Jiminez would preclude a reasonable

factfinder from concluding that they were so severe and pervasive as to "adversely affect the

terms and conditions of her . . . employment."  Leibovitz v. New York City Transit Auth., 252

F.3d 179, 189 (2d Cir. 2001).

      Finally, certain other evidence the Plaintiff has presented does suggest gender animus but

is too vague and sporadic to raise a triable issue on the Plaintiff's hostile work environment

claim.  The claim that superior officers exposed themselves to the Plaintiff, without identification

of the perpetrators or more detail about the incident or incidents (see Weir Aff. Ex. 16), is not

specific enough for a reasonable factfinder to conclude that it contributed to a hostile work

environment, see Dotson v. City of Syracuse, No. 5:04-CV-1388, 2009 WL 2176127, at *15

(N.D.N.Y. July 21, 2009).  Similarly, the single comment by a superior officer, otherwise

uninvolved with the investigation and discipline of the Plaintiff, that the Plaintiff faced

investigation and discipline because of her attractiveness is neither sufficiently severe nor

pervasive for a reasonable factfinder to conclude formed basis of hostile work environment

liability.  See Temple, 2010 WL 3824116, at *6 (citing Schwapp v. Town of Avon, 118 F.3d

106, 110 (2d Cir. 1997)).  Although the Plaintiff has presented evidence of an unpleasant and

occasionally inappropriate workplace, she has not presented evidence sufficient to raise a genuine

factual issue about whether this inappropriate conduct "adversely affect[ed] the terms and

conditions of her . . . employment."  Leibovitz, 252 F.3d at 189.

Accordingly, no reasonable factfinder could conclude, on this record, that the DOC violated Title VII by permitting the Plaintiff to suffer through a hostile work environment. Summary judgment is proper on the Plaintiff's hostile work environment claim.

C.    Retaliation.  "In order to establish a prima facie case of retaliation, [a plaintiff] must show (1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action."  Kaytor v. Electric Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010) (citing, inter alia, Patane, 508 F.3d at 115).

As in discriminatory job action claims, courts follow the familiar McDonnell Douglas burden-shifting approach in evaluating retaliation claims.  See, e.g., Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).  "At the summary judgment stage, if the plaintiff presents at least a minimal amount of evidence to support the elements of the claim, the burden of production shifts to the defendant to proffer a legitimate non-retaliatory reason for the adverse employment action. . . .  If the employer produces such evidence, the employee must, in order to avoid summary judgment, point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was a 'substantial reason for the adverse employment action.'"  Kaytor, 609 F.3d at 552-53 (quoting Jute, 420 F.3d at 173).

This Court concludes that the Plaintiff has successfully made out a prima facie claim of retaliation.  This Court further concludes that the DOC has offered a legitimate, non-retaliatory justification for the repeated investigation and discipline of the Plaintiff, namely reasonable bases to determine that she had violated or may have violated DOC administrative directives.  Finally,

18

this Court concludes that the Plaintiff has not presented sufficient evidence to enable a reasonable juror to infer that the true reason for the repeated investigation and discipline of the Plaintiff was retaliation.  Accordingly, no triable issues remain as to the Plaintiff's retaliation claim, and summary judgment is proper.

As to the Plaintiff's prima facie case, both parties agree that the Plaintiff engaged in protected activity and that the DOC knew that she had done so.  By subsequently investigating and disciplining the Plaintiff, the DOC subjected the Plaintiff to employment actions that, viewed in the light most favorable to the Plaintiff, were sufficiently adverse because they might dissuade a reasonable employee from engaging in protected activity.  See Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (quoting Burlington N. & Santa Fe R. Co. v. White, 548 U.S. 53, 61–67 (2006) (holding that the scope of Title VII's anti-retaliation provision is broader than its anti-discrimination provision, such that it applies to actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination"); Henton v. City of New London, No. 3:06-cv-2035 (EBB), 2008 WL 2185933, at *14-15 (D. Conn. May 23, 2008) ("[A] reasonable jury could find that [certain] disciplinary actions were materially adverse actions under the anti-retaliation provision of Title VII, even though Plaintiff failed to demonstrate that they constituted adverse employment actions under the antidiscrimination provision of the statute."); Sebold v. City of Middletown, 3:05-cv-1205 (AHN), 2007 WL 2782527, at *20-21 (D. Conn. Sept. 21, 2007) (holding that evidence of warnings and institution of disciplinary proceedings raised genuine issue of fact with respect to adverse employment action element of retaliation claim).  Finally, because less than a month elapsed between the Plaintiff's protected activity and the initiation of the March 2005, December 2007, and July 2008

investigations, the temporal proximity of the potentially adverse action to the protected activity

permits an inference of causation sufficient to make out a prima facie case of retaliation.[10]  See,

e.g., Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 554 (2d

Cir. 2001).

 The DOC has presented abundant evidence to satisfy its burden to demonstrate, in

response to the Plaintiff's prima facie case, that the adverse actions it took had legitimate, non-

retaliatory motives.  Specifically, the DOC has presented evidence that the investigations of the

Plaintiff occurred because DOC personnel had reason to believe that the Plaintiff had violated

DOC administrative directives.  The evidence suggests that the March 2005 investigation began

after a DOC officer found a potentially inappropriate letter addressed to the Plaintiff from an

inmate.  (Weir Aff. Ex. 1, 4-5.)  Similarly, the December 2007 investigation began after Lt.

Reaves filed an incident report raising concerns about a conversation between the Plaintiff and an

inmate and review of the relevant surveillance tapes did not conclusively establish whether the

Plaintiff had violated any administrative directives.[11]  (Weir Aff., Ex. 8, at 5-6.)  The July 2008

attempt by Lt. Jiminez to surveil the Plaintiff resulted from confidential informant intelligence.

---

[10] The remaining investigations and subsequent discipline of the Plaintiff occurred too remotely in time from alleged protected activity to permit an inference of causation, see Collins v. Conn. Job Corps, 684 F. Supp. 2d 232, 255 (D. Conn. 2010) (collecting cases), or only after an intervening event which breaks the chain of causal inferences, Bind v. City of New York, No. 08 Civ. 11105 (RJH), 2011 WL 4542897, at *17 (S.D.N.Y. Sept. 30, 2011) (collecting cases).

[11] To the extent that the Plaintiff claims that the continuation of the investigation despite the inconclusive review of the CRCI surveillance tape was itself an act of retaliation (Pl.'s Rule 56(a)(2) Stmt. ¶ 93), this Court rejects the argument.  An inconclusive initial review of evidence of a disciplinary infraction presents an abundantly reasonable basis for continuing such an investigation so as to resolve the allegation conclusively based on other, more substantial evidence.

(Weir Aff. Ex. 20, at 20-22, 27-29; Callahan Aff. Ex. 5, at 1.)  And the July 2008 investigation into whether the Plaintiff had called and inmate a "snitch" resulted from the Plaintiff, in fact, calling the inmate a "snitch."  (DeMaio Dep. 54:2, Oct. 15, 2010 ("I had called [the inmate] a snitch.").)  Accordingly, the DOC has satisfied its second-stage burden to present evidence that it had legitimate, non-retaliatory reasons for the repeated investigations and discipline of the Plaintiff.

The Plaintiff has not met her burden to "point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was a substantial reason for the adverse employment action."  Kaytor, 609 F.3d at 553 (internal quotations omitted).  For such evidence, the Plaintiff principally relies upon the temporal proximity of the investigation and discipline to her protected activity; given the DOC's proffered legitimate, non-retaliatory reasons for this investigation and discipline, the Plaintiff must present more in order to meet her burden.  Martinez v. Conn. State Library, ___ F. Supp. 2d ___, No. 3:09-cv-1341 (VLB), 2011 WL 4396704, at *16 (D. Conn. Sept. 21, 2011) ("[W]ithout more, . . . temporal proximity is insufficient to satisfy [a plaintiff's] burden to rebut [a] defendant's proffered legitimate non-retaliatory reason.") (internal quotations omitted).

The Plaintiff has not done so.  She cites purportedly inadequate or improper investigation of her complaints to the Affirmative Action Unit, as well as improper investigation into the "snitch" incident, as evidence rebutting the DOC's proffered reason and demonstrating its retaliatory motive.  Neither argument succeeds.

First, crediting for purposes of this motion the Plaintiff's contention that the Affirmative Action Unit conducted improper or substandard investigations of her complaints, the Plaintiff has

not presented any evidence of a connection between these improprieties and the investigation and discipline based on her conduct. The Plaintiff has pointed to no evidence that the Affirmative Action Unit played any role in initiating investigations of the Plaintiff's conduct or disciplining her. Nor has the Plaintiff pointed to any evidence that the superior officers who investigated and disciplined her influenced the Affirmative Action Unit in order to truncate or limit its investigations of the Plaintiff's complaints. Without evidence of a connection between the purportedly inadequate Affirmative Action Unit investigations and the investigation and discipline of the Plaintiff, evidence of the Affirmative Action Unit's shortcomings does not successfully rebut the DOC's proffered legitimate, non-retaliatory reasons for investigation and discipline based on the Plaintiff's conduct.[12]

Similarly, the allegations of improper investigation into the Plaintiff calling an inmate a "snitch" do not support any inference that the DOC's proffered reason for the investigation and discipline is pretext or that retaliatory animus motivated the investigation and discipline. Instead, the Plaintiff admitted that she engaged in the misconduct alleged against her. (DeMaio Dep. 54:2, Oct. 15, 2010 ("I had called [the inmate] a snitch.").) Both the investigation and discipline into the "snitch" incident therefore had sound factual bases. Under no reasonable view of this evidence could a factfinder conclude that the investigation and discipline of the "snitch" incident

---

[12] To the extent that the Plaintiff argues that a triable issue exists on her retaliation claims because the inadequate Affirmative Action Unit investigations into the Plaintiff's complaints are themselves adverse employment actions, this Court rejects the argument. Failure to investigate a complaint <u>might</u> support a retaliation claim if "the failure is in retaliation for some separate, protected act by the plaintiff." <u>Fincher v. Depository Trust and Clearing Corp.</u>, 604 F.3d 712, 722 (2d Cir. 2010). The Plaintiff has pointed to no evidence suggesting that the Affirmative Action Unit conducted substandard investigations into the Plaintiff's complaints to retaliate for her filing earlier complaints.

was pretextual or motivated by retaliatory animus.

Accordingly, the Plaintiff has failed to meet her third-stage burden of presenting sufficient evidence to permit an inference that retaliatory animus, rather than the proffered non-retaliatory reason, motivated the potentially adverse employment actions. Summary judgment on the Plaintiff's retaliation claim is therefore proper.

**IV.     CONCLUSION**

For these reasons, the DOC's motion for summary judgment [Doc. No. 59] is **granted**. Judgment shall enter for the DOC. The Clerk is directed to close the case.

SO ORDERED.

Dated at Bridgeport, Connecticut, this 14th day of March, 2012.


_____/s/_____
Warren W. Eginton
Senior United States District Judge

23